NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-122

COMMONWEALTH

vs.

MARK D. ELDRIDGE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant, Mark D. Eldridge, of assault and battery on a family or household member and assault by means of a dangerous weapon.  On appeal, the defendant argues that the trial judge erred in limiting his cross-examination of the victim and in excluding certain documents and the testimony of a U-Haul employee about the victim's demeanor in a telephone call.  We affirm.

Background.  We summarize the facts, as the jury could have found them, in the light most favorable to the Commonwealth. Commonwealth v. Tejada, 484 Mass. 1, 2, 4 (2020).  On July 19, 2023, the victim and the defendant, who had been married for six years but were recently separated, agreed to meet at a U-Haul

storage facility so that the victim could obtain her personal belongings.  When the defendant arrived, he confronted the victim regarding the fact that her new boyfriend had accompanied her to the storage unit.  The defendant said to the victim that she had three seconds "to get rid of that turd" before the defendant killed him.  The defendant then walked back to his truck, opened a toolbox, and grabbed a hammer.  He charged at the victim and pinned her against the passenger door of her car.  The defendant then smashed the windshield, the passenger window, and the car door with the hammer and struck the victim's nose with the hammer, grabbed her arm, and pushed her against the car.  When police officers arrived, the victim's face and arms were covered in blood.  The defendant told the police officers that the victim had attacked him and when police asked the defendant how the victim was injured, he responded that the victim "probably hit herself."

At trial, the defendant was the sole witness for the defense, presenting a theory of self-defense.  He claimed that the victim and her new boyfriend had arrived at the storage unit as part of a preconceived plan to attack him.  The defendant testified that the victim had punched him in the face and chest, kicked him, and spat at him.  The defendant testified that he was afraid of the victim's boyfriend, who had threatened to kill him, so he picked up a hammer from his toolbox to defend

2

himself.  Finally, the defendant denied hitting the victim but admitted that he had smashed the windshield of the victim's car to prevent her from driving away.

Discussion.  1.  Cross examination of witness.  The defendant claims that the judge erred by not allowing him to cross-examine the victim about an allegation that the defendant had made in an application for a criminal complaint.  In that application, the defendant alleged that the victim had threatened the defendant that if he did not meet her financial demands in the divorce proceedings, she would testify against him in the criminal trial.

At trial, the judge precluded defense counsel from inquiring into this area, stating that he was not going to permit the defendant to get "into collateral matters, and matters which aren't relevant to what happened that day."  At sidebar, the judge further instructed that he would not allow "character assassination," and that, while the witness could be impeached if there was a conviction, the defendant's allegations in an application for a private complaint were inadmissible.

Trial judges are afforded "broad discretion to limit cross-examination of a witness."  Commonwealth v. Mercado, 456 Mass. 198, 203 (2010).  "If a defendant believes that the judge improperly restrained his cross-examination of a witness, the defendant must demonstrate that the judge abused his discretion

3

and that he was prejudiced by such restraint" (citation omitted).  Commonwealth v. Sealy, 467 Mass. 617, 624 (2014).

The defendant contends that, by limiting cross-examination of the alleged victim regarding the defendant's allegations in the complaint application, the judge improperly restricted his right to present his theory of defense and to confront an adverse witness at trial.  Undoubtedly, the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights give a defendant the right to cross-examine prosecution witnesses on the issue of bias or prejudice.  Commonwealth v. Avalos, 454 Mass. 1, 6 (2009).  This right, however, is not absolute.  Commonwealth v. Barnes, 399 Mass. 385, 393 (1987).  The judge may not completely "bar all inquiry into the subject" of bias.  Avalos, supra at 7, quoting Commonwealth v. Allison, 434 Mass. 670, 681 (2001).  However, a judge may "limit and 'control the scope of cross-examination . . . once the jury have been "adequately exposed" to the issue.'"  Commonwealth v. Mountry, 463 Mass. 80, 86 (2012), quoting Commonwealth v. Joyce, 382 Mass. 222, 231 (1981).  In particular, a judge "has discretion to limit questions that involve collateral issues and questions where the connection to the evidence of bias is too speculative.  'A defendant must make a "plausible showing" of alleged bias, with a factual basis for support'; otherwise, the judge may restrict or entirely exclude

4

the inquiry" (citation omitted).  Commonwealth v. Chicas, 481 Mass. 316, 320 (2019), quoting Sealy, 467 Mass. at 624.

A review of the trial transcript establishes that the judge did not foreclose inquiry by the defendant into the issue of bias.  On the contrary, the jury was well aware that the defendant and the victim were in the midst of a contentious divorce and that the victim had moved out of the marital home to live with her new boyfriend.  The defendant testified that he wished to remain married to the victim and that the new boyfriend was the reason his marriage had ended.  The judge did not prevent cross-examination of the victim on any bias that she may have harbored against the defendant, and the jury heard ample evidence from which they could infer bias.  Therefore, the judge acted within his discretion in excluding the defendant's unsubstantiated allegations in an application for a criminal complaint regarding the pending divorce proceeding because it was a collateral matter that would only have distracted the jury.  See Chicas, 481 Mass. at 320.

2.  Exclusion of U-Haul receipt and testimony of U-Haul employee.  Next, the defendant contends that the judge abused his discretion by refusing to allow the admission of U-Haul documents of an unpaid storage bill.  At trial, the defendant sought to admit the documents for the purpose of establishing that the victim had lied at a clerk-magistrate hearing when she

5

testified that she had paid for the storage unit.  The defendant also contends that the judge erred in precluding him from calling a U-Haul employee as a witness.  The U-Haul employee was not a percipient witness to the assault, nor was he the keeper of the records.  Rather, at trial the defendant claimed that the U-Haul employee would testify about the victim's alleged demeanor during a telephone call before she arrived at the facility.

The judge ruled that the unauthenticated U-Haul documents were inadmissible.  The judge correctly reasoned that this evidence was not relevant and was not probative of the victim's bias or motive to fabricate the charges against the defendant. See Commonwealth v. Chase, 372 Mass. 736, 747 (1977) ("Extrinsic evidence on a collateral matter may be introduced at trial for the purposes of impeachment only in the discretion of the judge").  We agree with the judge's conclusion that "whether she paid [the] bill or not, is not relevant."  We also note that, despite this ruling, the judge gave the defendant wide leeway on cross-examination of the victim, including by allowing him to question the victim about whether she had paid the U-Haul bill.

It was also within the judge's discretion to exclude the testimony of the U-Haul employee as to the victim's alleged demeanor on the telephone at some point prior to the incident as it was irrelevant and without a proper foundation.  Even if we

were to consider that the proffered testimony could have been marginally relevant to the defendant's self-defense claim, the judge could have determined that the scant relevance of the evidence was substantially outweighed by the danger of confusing the issues and the waste of time of calling a new witness solely for that limited purpose.  See Mass. G. Evid. § 403 (2026) (court may exclude relevant evidence if probative value is substantially outweighed by danger of confusing issues and wasting time, among other things).  Furthermore, even if the testimony was excluded in error, the defendant was not prejudiced, given the overwhelming evidence of his guilt, including but not limited to the medical evidence of the victim's injuries, testimony corroborating the victim's version of events, and the lack of defensive injuries on the defendant. See Commonwealth v. Wilson, 427 Mass. 336, 348 (1998) (no prejudice where "the other evidence of [the defendant's] guilt" was "overwhelming").

Judgments affirmed.

By the Court (Grant, Walsh & Brennan, JJ.[1]),

Clerk

Entered:  May 21, 2026.

---

[1] The panelists are listed in order of seniority.